UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Deborah Melina,

Plaintiff,

v.

Brooklyn Park Budget Cars, Inc., and Morrie's Imports, Inc., d/b/a Morrie's Automotive Group,

Defendants.

Civ. File No. 01-1695 (PAM/RLE)

**ORDER AND MEMORANDUM**

---

This matter is before the Court on Defendants' Motion for Summary Judgment of Plaintiff's sexual harassment and retaliation claims. For the following reasons, the Court grants the Motion.

**BACKGROUND**

Plaintiff Deborah Melina worked for two years at a car dealership owned by Defendants Brooklyn Park Budget Cars, Inc. and Morrie's Imports, Inc. ("Defendants" or "Morrie's"). Melina received good performance reviews and promotions, but Defendants claim that she demonstrated a uniquely uncooperative attitude during her employment. Melina claims that she experienced sexual harassment and was ultimately fired for complaining about the harassment.

FILED DEC 1 1 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 1 1 2002
DEPUTY CLERK

Her sexual harassment claims are based on the conduct of a minority owner and supervisor, Ronald Wolff. Melina worked evenings and would frequently receive phone calls from Wolff. She claims that he would call the dealership while inebriated. During one such phone call, Wolff told Melina that he loved her and that she was the best thing that had happened to him. Neither party suggests that the two had any kind of romantic relationship, but Melina became upset and uncomfortable with the way Wolff treated her and talked to her when he called the business at night. He made nearly daily calls, ostensibly to check on the business each evening. Melina also describes two other incidents which constitute her harassment claim. Wolff scolded her one afternoon after she returned from a lunch date. He also demanded that she go straight home one night instead of going on a date with one of her friends. Melina characterizes his behavior as like a "jealous lover."

Defendants claim that Melina displayed a poor attitude, at times crossing the line to insubordination. On one occasion, she and a supervisor, Joe Ruhland, had a disagreement over the sale of a car that had been previously promised to another customer. The disagreement culminated in Ruhland sending Melina home for the remainder of her shift. Melina left the business and called her sister from a car in the parking lot. After an hour, Melina returned to speak with Ruhland. At this time, she told Ruhland about Wolff's phone calls and his inappropriate conduct. She and Ruhland agreed that she would take the rest of the day off, and he relayed her harassment concerns to human resources. Additionally, Ruhland asked Wolff to stop calling the business at night. Melina had no problems with

Wolff's conduct after her meeting with Ruhland. The disagreement with Ruhland and Melina's subsequent behavior led the dealership to put Melina on suspension, pending the outcome of an investigation into her harassment claims. Upon completing the investigation and concluding that the claims were unfounded, the dealership terminated Melina.

**STANDARD OF REVIEW**

Defendants filed a Motion for Summary Judgment pursuant to Rule 56(c), which provides that such a motion shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 740, 747 (8th Cir. 1996).

The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). In employment discrimination cases, courts should not grant summary judgment motions unless the evidence can only support one conclusion. Crawford v. Runyon, 37 F.3d 1338, 1341

(8th Cir. 1994), quoted in Calvin v. Yellow Freight Sys., Inc., No. 99-3809, 2000 WL 995011, at *3 (8th Cir. July 20, 2002).

Melina brings this action under both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363.03. Courts look to Title VII case law to analyze both claims. Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). In this case, Melina must establish the very same elements of a prima facie case under both Title VII and the MHRA for her harassment and retaliation claims.

## DISCUSSION

### A. Hostile Work Environment Claim

To prove a claim of sexual harassment based on a hostile work environment, a plaintiff must make a prima facie showing of the following four elements: (1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment. Duncan v. Gen. Motors Corp., 300 F.3d 928, 933 (8th Cir. 2002) (citing Beard v. Flying J., Inc., 266 F.3d 792, 797-98 (8th Cir. 2001); see also Woodland v. Ryerson & Son, Inc., 302 F.3d 839, 843 (8th Cir. 2002) (citing Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999)). To actually alter the terms and conditions of employment, conduct must be severe and pervasive, both objectively and subjectively. Woodland, 302 F.3d at 843;

Duncan, 300 F.3d at 934 (both cases citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993)). Factors to consider when determining the severity and pervasiveness of an employer's conduct include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. Woodland, 302 F.3d at 843; Duncan, 300 F.3d at 934.

The conduct in this case does not surpass the high threshold established in Harris for a hostile work environment claim. In Duncan, the prima facie case included evidence that the defendant: (1) repeatedly touched the plaintiff's hand; (2) propositioned the plaintiff; (3) asked the plaintiff to sketch a planter he displayed in his office; the planter was shaped like a man wearing a sombrero and had a hole in the front of the man's pants through which a cactus protruded; (4) showed plaintiff on multiple occasions a novelty pacifier (shaped like a penis) that he kept at work; (5) used a screen saver depicting a naked woman; and (6) made off-color gender-related jokes. The Eighth Circuit concluded that, assuming their truth, even all of these troubling allegations taken together did not pose a question of fact on whether the employer's conduct created an objectively hostile work environment and did not meet the standard necessary for actionable sexual harassment. Duncan, 300 F.3d at 934. The Eight Circuit panel was able to recognize that the defendant's actions "were boorish, chauvinistic, and decidedly immature." In this case, Ronald Wolff, a part owner of Morrie's, made multiple phone calls to Melina while allegedly inebriated. During one of them, Wolff

professed his love for her. Melina also maintains that Wolff got angry at her for dating another man and occasionally expressed jealousy over her. These allegations fall far short of the conduct in Duncan and therefore do not exhibit the severity and pervasiveness necessary to alter a term or condition of employment.

**B. Retaliation Claim**

To establish a prima facie case of retaliatory discrimination, Melina must show that she filed a charge of discrimination or engaged in some other protected activity, that an adverse employment action was taken against her, and that there was a causal connection between the two. Brower v. Runyon, 178 F.3d 1002, 1005 (8th Cir. 1999); see also Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 896 (8th Cir. 2002). While Melina establishes the first two components of a prima facie case of retaliation, she has not established the third.

Defendants claim that Melina has failed to demonstrate the first element of her prima facie case. They argue that Melina did not engage in protected activity because her supervisor's conduct does not constitute sexual harassment as a matter of law. However, the "underlying charge need not be meritorious for related activity to be protected under the participation clause." Brower, 178 F.3d at 1006. Instead, the plaintiff must show a good faith reasonable belief that the underlying challenged conduct violated the law. Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 714 (8th Cir. 2000) (citing Wentz v. Md. Cas. Co.,

869 F.3d 1153, 1155 (8th Cir. 1989)). In this case, a reasonable person could believe that Wolff's conduct violated laws prohibiting sexual harassment.

Defendants then argue that Melina fails to prove the third prong of her prima facie case: causation. Where multiple motives influence an employer's decision, the terms "causal link" or "causation" mean "that an employer's 'retaliatory motive played a part in the adverse employment action.'" Kipp, 280 F.3d at 896-97 (adopting the holding in Sumner v. United States Postal Serv., 899 F.2d 203, 208-09 (2d Cir. 1990)). "Evidence that gives rise to 'an inference of retaliatory motive' on the part of the employer is sufficient to establish a causal link." Id. (quoting Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1993) and Couty v. Dole, 886 F.2d 147, 148 (8th Cir. 1989)). In this case, Melina testified that she "was being terminated for making the harassment complaint." (Smith Aff. Ex. 1 at 65-66; Strathman Aff. Ex. A at 65-66.) Additionally, other evidence in the record shows that the investigation into Melina's allegations had some bearing on Morrie's decision to discharge Melina. (See, e.g., Smith Aff. Ex. 4 at 86-87, Ex. 10; Strathman Aff. Ex. A(5), Ex. B at 86-87.) This evidence, however, does not give rise to an inference of retaliatory motive. On the contrary, this evidence shows that Morrie's fired Melina only after it concluded that her harassment allegations were not actionable. Had their internal investigation shown otherwise, the evidence suggests that Morrie's would have continued to employ Melina indefinitely. While there is evidence in the record that the internal investigation had some

bearing on the ultimate employment action, the evidence shows quite the opposite of a retaliatory motive. Therefore, the record shows that Melina has not established causation.

**CONCLUSION**

Plaintiff fails to establish a prima facie case of sexual harassment under Title VII and the MHRA. Likewise, Plaintiff fails to establish a prima facie case of retaliation under Title VII and the MHRA. Accordingly, after review of the record, files, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Doc. No.27) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 9, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*